Minor O. **TOWNSEND, Individually and as Administrator of the estate of Edith Townsend, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 1834.

United States District Court
S. D. Illinois, S. D.

Aug. 3, 1956.

Roy M. Rhodes, Springfield, Ill., for plaintiff.

John B. Stoddart, Jr., U. S. Atty., Marks Alexander, Asst. U. S. Atty., Springfield, Ill., Haran Pomeroy, Atty., Dept. of Justice, Washington, D. C., for defendant.

BRIGGLE, Chief Judge.

### Findings of Fact

1. The plaintiff's late wife referred to herein as "taxpayer" was an employee of the Illinois Bell Telephone Company, hereinafter referred to as "employer," during the years 1950 and 1951.

2. At various times during such years she was absent from work on account of sickness. Her employer continued to pay her full weekly pay during such absence.

3. Except for payments made during the taxpayer's first seven days of absence on account of sickness which were made under departmental regulations, the payments in paragraph 2 were made

under the employer's company regulations. These regulations are set forth in a brochure styled plan for Employees' Pensions, Disability Benefits, and Death Benefits.

4. The employer withheld and paid over to the Collector of Internal Revenue the federal income taxes due from the taxpayer on payments made to her, including the payments made under the company regulations and mentioned in paragraph 3.

5. The employer made the payments under the regulations by payroll check by which all wage payments were made and continued to make payroll deductions from such payments.

6. The taxpayer reported the payments made under the regulations in her federal income tax returns for the years in question under the heading "total wages, salaries, commissions, bonuses and other compensation" as part of "Total Wages".

7. Thereafter, the taxpayer filed timely refund claims claiming that the payments under the plan were exempt from income tax. The present actions followed, all conditions precedent having been performed or occurred.

8. The plan mentioned in paragraph 3 is set forth in terms of company regulations. They provide, *inter alia*, that the employer undertakes to provide for the payment of definite amounts to its employees when they are disabled by sickness and that all employees of more than two years' service shall be qualified to receive sickness disability benefit payments. Such payments range from full pay for 4 weeks and half pay thereafter for 9 weeks for an employee with 2 to 5 years of service, to full pay for 52 weeks for an employee with 25 years' service or more. The regulations also provide that the plan shall be administered by a committee appointed by the employer's board of directors to serve during its pleasure; that the committee shall determine conclusively for all parties all questions arising in the administration of the plan; and that no employee has any right to any benefits thereunder other than the amount to which he has theretofore become entitled and which the committee has directed be paid to the particular employee. The committee members are the operating heads of the employer's various departments.

9. The plan is flexibly administered. The committee from time to time makes loans to employees and payments in excess of those provided in the plan.

10. The employees pay no premiums for the sickness payments which are charged by the employer to operating expenses. There is no fund or reserve, and there is no independent trust in connection with the sickness provisions of the regulations. The cost of the sickness payments is not determined on an actuarial basis.

11. All employees of the employer except those who have worked for less than two years are covered by the plan. No persons other then the employer's employees have ever been covered under the plan.

12. On the stub accompanying the payroll check used to make these payments, as well as on its payroll register, the employer listed these payments under a statement of earnings as part of total wages earned.

13. The sickness provisions of the plan do not involve risk-distributing.

14. Individual and group health insurance do not insure an individual for more then 80 per cent and 70 per cent, respectively, of their salaries or earned income.

15. The payments under the plan were the continuation of the taxpayer's pay during sick leave. Such payments were compensation for past and prospective services.

16. The sickness payments under the plan are not known as health insurance in the ordinary, everyday meaning of the phrase "health insurance".

### Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of the case.

2. The pertinent words contained in Section 22(b) (5) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(b) (5), are to be interpreted in their ordinary and everyday meaning.

3. The Internal Revenue Code of 1939 is to be construed as a whole and not as if each of its provisions were independent of the others. Other pertinent provisions in the Code may be consulted to determine the true meaning of the pertinent language in Section 22(b) (5) of the Internal Revenue Code of 1939.

4. The Illinois Bell Telephone Company is not authorized or licensed to act as an insurer.

5. The sickness payments made to the taxpayer by her employer during the years 1950 and 1951 were not received under an insurance contract.

6. Section 22(b) (5), which provides for an exemption from taxation, must be strictly construed. The taxpayer is claiming an exemption from taxation and must bring herself clearly within the excepted class.

7. There is a presumption that the taxes in controversy were rightfully collected upon assessments correctly made by the Commissioner of Internal Revenue. The burden rests upon the taxpayer to show that the taxes were illegally collected.

8. Risk-shifting and risk-distributing are essential to insurance and mean that the cost of potential losses to some members of a group is spread ratably throughout the group.

9. The sickness payments received by the taxpayer from her employer in the years 1950 and 1951 were not amounts received through accident or health insurance as compensation for personal injuries or sickness within the meaning of Section 22(b) (5) of the Internal Revenue Code of 1939.

10. The sickness payments received by the taxpayer from her employer in the years 1950 and 1951 are not exempt from federal income tax. The plaintiff is not entitled to recover.